IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KROY IP HOLDINGS, LLC, | § |
| Plaintiff, | § |
| v. | § CASE NO. 2:13-cv-936-JRG |
| STARBUCKS CORPORATION, INC. et al., | § |
| Defendants. | § |

## MEMORANDUM OPINION AND ORDER

**I.   INTRODUCTION**

Pending before the Court is Starbucks Corporation's ("Starbucks") Motion to Transfer Venue (Dkt. No. 14). Starbucks contends that the Western District of Washington is a clearly more convenient forum for this case than the Eastern District of Texas. Plaintiff Kroy IP Holdings, LLC ("Kroy") opposes transfer. Having considered the Motion and all of the evidence in the record, the Court **DENIES** Starbucks' motion.

**II.   BACKGROUND**

Kroy IP Holdings, LLC ("Kroy") is a Delaware limited liability company with its principal place of business in Baltimore, Maryland. It filed suit against Starbucks on November 4, 2013. Kroy alleges that Starbucks, and specifically Starbucks' "My Starbucks Rewards" or "MSR" customer loyalty program, infringes U.S. Patent No. 7,054,830 ("the '830 Patent"). Starbucks is a Washington corporation with its principal place of business in Seattle, Washington and with established retail outlets across the United States.

Potentially relevant non-parties include:

- Loyalty Methods, Inc. ("Loyalty Methods"), based in Seattle, Washington;

- First Data Corporation ("First Data"), located at least in part in Coral Springs, Florida;

- Siebel CRM Systems, Inc. ("Siebel"), located at least in part in Austin, Texas, but with personnel in Seattle, Washington; and

- The inventors of the '830 Patent, located in Baltimore, Maryland and New York, New York.

## III. LEGAL STANDARDS

28 U.S.C § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The initial question in applying the provisions of § 1404(a) is whether the suit could have originally been brought in the proposed transferee district. *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the Court must weigh the relative public and private factors of the current venue against the transferee

venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.

The plaintiff's choice of venue is not a factor in this analysis. *Volkswagen II*, 545 F.3d at 314-15. Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319. Furthermore, though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

IV.  ANALYSIS

   A.  **Proper Venue**

The parties do not dispute that this case could have been brought in the Western District of Washington.

3

### B. Private Interest Factors

#### i. *Relative Ease of Access to Sources of Proof*

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be weighed as a private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321. Indeed, the Federal Circuit has indicated that access to an alleged infringer's proof is important to venue transfer analyses in patent infringement cases. *See Genentech*, 566 F.3d at 1345.

In a patent case, the defendant will usually provide the bulk of the relevant documentary evidence. *Id.* Starbucks claims that its documents related to the accused MSR program are located in the Western District of Washington. Dkt. No. 14, at 6. However, Starbucks concedes that non-parties First Data and Siebel contribute to the operation of the MSR program, and that these companies have information relevant to this case stored in Florida and Texas, respectively. Moreover, Kroy's documents and other evidence are located in Maryland and New York.

The Court is persuaded that the potentially relevant evidence is dispersed across the country. Accordingly, the Court finds that Starbucks has failed to show that this factor favors transfer.

#### ii. *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not. *Volkswagen II*, 545 F.3d at 316. The potential non-party witnesses in this case are located in Washington, Texas, Maryland and New York. The parties agree that neither this District nor the Western District of Washington may exercise such absolute subpoena power over such witnesses. Accordingly, this factor is neutral.

### iii. Cost of Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis. *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F.Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012). "A district court should assess the relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 at 1343. However, there is no requirement that the movant identify "key witnesses," or show "that the potential witness has more than relevant and material information . . . ." *Id.* at 1343-44.

Kroy has identified the inventors and the examiner for the '830 as potential non-party witnesses that may provide testimony. *See* Dkt. No. 17 at 13. The inventors reside in Baltimore, Maryland and New York, New York; the examiner resides in Washington D.C.[1] *Id.* Kroy also argues that any relevant witness from First Data will presumably reside in or near Coral Springs, Florida. *Id.* For such witnesses, travel to the Western District of Washington will be more expensive and less convenient than travel to the Eastern District of Texas. Moreover, to the extent the inventors or examiner are called to testify at trial, they are likely to do so in each of the cases involving the '830 patent. As a result, transfer of this case will likely subject such non-party witnesses to the discovery process in multiple courts, compounding the inconvenience to such witnesses.

---

[1] Although neither party discusses the patent examiner at length, neither the relevance of any testimony nor the mechanism by which the parties might obtain such discovery from the examiner is not entirely clear to the Court, but this need not be further analyzed because it is not dispositive.

5

In contrast, Starbucks argues that its employees with knowledge regarding the MSR program reside in the Western District of Washington. While the Court is not insensitive to the inconvenience to Starbucks' employees, "it is the convenience of non-party witnesses…that is the more important factor and is accorded greater weight in a transfer of venue analysis." *Mazda Motor Corp.*, 90 F.Supp.2d at 775. To that end, Starbucks has identified certain of its own former employees, as well as employees of Loyalty Methods and Siebel, as potential non-party witnesses. Starbucks argues, on information and belief, that such potential witnesses reside in the Seattle area.

It is true that this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue," *Genentech*, 566 F.3d at 1344. However, Starbucks has made no showing with respect to the "materiality" of the Seattle based non-party witnesses. In particular, Starbucks has failed to indicate why the testimony of its former employees would not be duplicative of testimony provided by current employees who presumably understand the operation and design of Starbucks' ongoing MSR program. Starbucks argues that it is not required to submit declarations or other supporting evidence indicating the importance of the testimony available from potential witnesses, citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 258 (1982). However, the *Piper* Court rejected such a requirement because the witnesses at issue were located in *Scotland*, far outside any U.S. court's subpoena power. *Id.* ("[Defendants] have moved for dismissal precisely because many crucial witnesses are located beyond the reach of compulsory process, and thus are difficult to identify or interview."). In contrast, Starbucks cannot credibly argue that it would have been "difficult to identify or interview" the Seattle based non-party witnesses. Although this Court stops short of requiring such declarations or other evidence as a matter of course, the fact that Starbucks has made no effort to address the

6

materiality of any of the witnesses contributes to its failure to meet its burden of showing that the Western District of Washington is a clearly more convenient venue for this case.

Moreover, should such witnesses be compelled to testify, Kroy may take testimony by deposition regardless of the trial court's location. *See* Federal Rule of Civil Procedure 45(a)(2), (c)(1)(A), (d)(3)(A), (f). The availability of deposition testimony for such Seattle-based witnesses mitigates against the inconvenience of travel to Texas. The Court expects both parties to comply with the Federal Rules and avoid any unnecessary inconvenience to third parties. Should either party feel that its counterpart has failed to do so, it should seek the appropriate relief at that time.

Ultimately, the Court finds that transfer to the Western District of Washington would merely reassign inconvenience from certain witnesses to other witnesses. Accordingly, Starbucks has failed to show that this factor favors transfer.

     *iv.*  *Other Practical Problems*

In deciding whether or not to transfer a case pursuant to § 1404, the Court considers the practical problems associated with such a transfer, including "those that are rationally based on judicial economy." *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *6 (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011). "Motions to transfer venue are to be decided based on the situation which existed when suit was instituted," *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (internal quotation omitted). Moreover, "[e]ach case turns on its own facts" and the meaningful application of the § 1404 factors to those facts "often creates a reasonable range of choice" in which the district court must exercise its discretion. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010).

In such cases, "the § 1404(a) factors of public interest or judicial economy can be of paramount consideration." *Id.* (internal quotation omitted). Specifically, "the existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice." *See Volkswagen II*, 566 F.3d 1349, 1351 (Fed. Cir. 2009). Prior to filing this case, Kroy filed two suits for the alleged infringement of the '830 Patent: *Kroy IP Holdings, LLC v. Safeway Inc.*, No. 2:12-cv-800, and *Kroy IP Holdings, LLC v. Kroger Co.*, No. 2:13-cv-141. The Court consolidated the *Safeway* and *Kroger* cases for all pretrial issues other than venue, held a scheduling conference and entered a docket control order; Kroy served its infringement contentions and commenced discovery—all prior to the filing of this case. Moreover, this case has been consolidated for pretrial purposes with nine other cases alleging infringement of the '830 Patent.[2]

Thus, at the time this case was filed, this Court's familiarity with the patent-in-suit and the technology at issue allowed it to best preside over this action without "the wastefulness of time, energy and money that § 1404 was designed to prevent." *Volkswagen II*, 566 F.3d at 1351 (internal quotations and citations omitted); *see also In re EMC Corp.*, 501 Fed. Appx. at 976 ("we have held that a district court's experience with a patent in prior litigation and the copendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue."). Standing alone, the presence of separately filed cases cannot justify venue in this district, or defeat an otherwise compelling case for transfer. *See GeoTag, Inc. v.*

---

[2] *Kroy IP Holdings, LLC v. Autozone, Inc*, No. 2:13-cv-888 (Lead Case); *Kroy IP Holdings, LLC v. BJ's Restaurants, Inc.*, No. 2:13-cv-889; *Kroy IP Holdings, LLC v. Genghis Grill Franchise Concepts LP*, No. 2:13-cv-890; *Kroy IP Holdings, LLC v. Panera Bread Company*, No. 2:13-cv-891; *Kroy IP Holdings, LLC v. TGI Friday's, Inc.*, 2:13-cv-892; *Kroy IP Holdings, LLC v. Hallmark Cards, Inc.*, No. 2:13-cv-933; *Kroy IP Holdings, LLC v. The Men's Wearhouse, Inc.*, No. 2:13-cv-934; and *Kroy IP Holdings, LLC v. Mrs. Fields Famous Brands, LLC d/b/a TCBY*, No. 2:13-cv-935.

*Starbucks Corp.*, 2013 U.S. Dist. LEXIS 58575 at *28 (E.D. Tex. Jan. 14, 2013). However where, as here, the movant has failed to demonstrate that the private and public interest factors favor transfer, then the Court will not ignore the benefit to judicial economy resulting from this Court's familiarity with the patent-in-suit and other common issues of law and fact. Accordingly, while far from dispositive, this factor weighs against transfer.

### C. Public Interest Factors

Of the four public interest factors recited above, the parties dispute only three: the administrative difficulties flowing from court congestions; local interest in the resolution of this case, and the trial court's familiarity with the governing law.

#### i. The Administrative Difficulties Flowing From Court Congestion

The first public interest factor is court congestion. Generally, this factor favors a district that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347. However, of all the venue factors, this is the "most speculative." *Id*. The parties both cite statistics regarding the average time-to-trial for patent cases in the Western District of Washington and the Eastern District of Texas. Such statistics—which are of limited value—indicate that time-to-trial for patent cases is roughly equivalent between the two courts. This factor is therefore neutral.

#### ii. Local Interest in Having Localized Interests Decided at Home

The Court considers the local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004). Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests. *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

9

Starbucks contends that the Western District of Washington has a greater localized interest in this case because Starbucks maintains its corporate headquarters in Seattle. To the extent that Starbucks position is staked upon a connection not to "the events that gave rise to this suit," as suggested by *In re Volkswagen II*, but rather a connection of some residents of the Western District of Washington, financial or otherwise, to Starbucks itself – the Court notes that this both raises troubling fairness implications and is not in keeping with the Court's guidance in *Volkswagen I*. 545 F.3d at 318. The Court finds that Starbucks has failed to show that this factor favors transfer.

> iii. *Familiarity with the Governing Law*

Courts also consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203. The Court observes that both the Western District of Washington and Eastern District of Texas are familiar with patent law. This factor is neutral.

> iv. *The Avoidance of Unnecessary Problems of Conflict of Laws*

The parties acknowledge that no conflict of laws questions are expected in this case. Thus, this factor is neutral.

## VI. CONCLUSION

A motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d at 1197; *In re Genentech, Inc.*, 566 F.3d at 1342 (Fed. Cir. 2009). After weighing the evidence as a whole, the Court finds that this is not such a situation. Starbucks has failed to carry its burden to show that the Western District of Washington is a clearly more convenient forum than the Eastern District of Texas. Accordingly, Starbucks' Motion to Transfer Venue (Dkt. No. 14) is **DENIED**.

**So ORDERED and SIGNED this 30th day of September, 2014.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE